***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. At all relevant times herein, defendant was a duly qualified self-insured with Claims Management as its third-party administrator.
4. The parties stipulated to a packet of North Carolina Industrial Commission Forms.
5. The date of plaintiff's admittedly compensable injury was March 24, 1995.
6. Plaintiff's average weekly wage was $247.15, yielding a compensation rate of $164.77.
7. Plaintiff received temporary total disability benefits and temporary partial disability benefits as reflected on the Industrial Commission Forms 28 dated July 20, 1995 and December 18, 1995.
8. Plaintiff returned to work on July 20, 1995 to regular hours and wages.
9. Plaintiff's temporary total disability benefits were reinstated by defendant on October 20, 1997 for a period beginning July 29, 1997.
10. The parties stipulated to plaintiff's medical records from Dr. Ragaz, Anson Family Medicine, Carolina Bone Joint, Sandhills Orthopaedic Spine Clinic, Charlotte Orthopaedic Specialists, The McDowell Hospital, Southeastern Spine Center, St. Joseph's Hospital, Bowman Gray School of Medicine, Baptist Hospital, and CRA Managed Care, Inc.
11. The issues presented are:
 a) Whether plaintiff is entitled to ongoing workers' compensation benefits, including temporary total disability, permanent partial disability and medical compensation due to her admittedly compensable injury by accident; and
 b) Whether plaintiff sustained a change of condition related to her admittedly compensable injury by accident of March 24, 1995.
 ***********
The Full Commission adopts in part and modifies in part the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old. She is a high school graduate.
2. On March 24, 1995 plaintiff was employed by defendant as a department manager. As she carried shelves on each arm, plaintiff slipped and fell, landing on her buttocks and coccyx region. Defendant accepted plaintiff's claim as compensable by filing a Form 60 with the Commission on August 4, 1995.
3. Plaintiff initially presented to Anson Family Medical complaining of pelvic pain. Plaintiff was diagnosed with a pulled muscle in her right hip and was taken out of work for four days.
4. Plaintiff continued to experience significant pain and discomfort in her lower back and buttocks with radiation into her lower extremities. On June 21, 1995 plaintiff presented to Dr. David N. DuPuy, an orthopaedic surgeon.
5. Dr. DuPuy injected plaintiff's sacroiliac joint and reviewed a bone scan and MRI of the sacrococcygeal pelvic regions. These tests, however, were not specific to the L4-5 region. Dr. DuPuy never requested an MRI of the L4-5 area and never took any motion x-rays to demonstrate the existence of possible pars defect. In July 1995 Dr. DuPuy released plaintiff to part-time work with restrictions and in August 1995 he released plaintiff to full duty work with no restrictions and no permanent partial disability rating.
6. Defendant paid plaintiff periods of temporary total and temporary partial disability compensation from March 29, 1995 through July 20, 1995. Defendant filed a Form 28B dated July 20, 1995, showing the last payment of compensation was made on July 20, 1995. Defendant filed a "Final" Form 28B on December 18, 1995, showing that the last payment of medical compensation was made on November 13, 1995. These payments of compensation were made pursuant to the Form 60.
7. After plaintiff returned to work for defendant on or about July 20, 1995, plaintiff was transferred to defendant's Morganton, North Carolina, store to work as a stocker and eventually again as a manager. However, plaintiff continued to work in pain and had to limit her lifting and squatting activities. In January 1996 plaintiff was forced to resign from defendant's employment because she could not climb a ladder or lift boxes and it was too painful for her to fulfill her job duties. Plaintiff moved to the middle of the state where she worked for her mother as a bookkeeper and then cared for an elderly patient who eventually died in May 1996. During this period, plaintiff continued to experience low back pain and pain in her legs and hips. Plaintiff has not worked in any capacity since May 1996.
8. Plaintiff's pain worsened over the next year. Plaintiff made numerous and repeated attempts to contact the third-party administrator, Claims Management, to request appropriate medical treatment for her pain. Finally, on September 24, 1996 plaintiff was allowed by the adjuster to return to Dr. DuPuy. Dr. DuPuy administered trigger point injections. Dr. DuPuy noted that plaintiff's condition had not improved over the past 18 months and, therefore, based upon plaintiff's continued complaints of pain, Dr. DuPuy assigned plaintiff a 3% permanent partial disability rating to her back. Although defendant authorized and paid for the visit to Dr. DuPuy, there is no evidence of record that defendant ever paid compensation for this rating, nor was any agreement executed for payment of plaintiff's permanent partial disability rating.
9. In February and March of 1997 plaintiff began contacting the adjuster to request authorization of a physician closer to her home. Defendant assigned a vocational case manager, Dale Poplin of Concentra Managed Care, to plaintiff's case. Ms. Poplin contacted plaintiff by letter on June 2, 1997 and, with Claims Management's approval, made an appointment for plaintiff with Dr. Mark Moody, an orthopaedic surgeon.
10. On June 26, 1997 Dr. Moody reviewed plaintiff's previous pelvic MRI and x-rays which did not reveal pars defect. Dr. Moody ordered lateral flexion-extension x-rays of plaintiff's lumbar spine which revealed for the first time isthmic spondylolisthesis grade 1, L4-5. Dr. Moody also ordered an MRI which was performed on July 23, 1997 and which revealed bilateral pars defect at C4 and a diffused disc bulge at L4-5. Dr. Moody took plaintiff out of work on July 29, 1997 and as of that date plaintiff was unable to earn wages in any employment as a result of the compensable injury by accident. Dr. Moody felt that if plaintiff's physical therapy was unsuccessful, she would be a candidate for fusion surgery. On October 30, 1997 Dr. Moody determined that plaintiff had reached maximum medical improvement and assigned plaintiff a 15% permanent partial disability rating to her back.
11. Pursuant to the Form 60, Claims Management authorized, approved, and paid for all of plaintiff's treatment and care with Dr. Moody.
12. After plaintiff filed a Form 33 Request for Hearing with the Commission on October 6, 1997, defendant resumed payment of compensation to plaintiff as of October 20, 1997, retroactive to July 29, 1997, which was the date Dr. Moody took plaintiff out of work. Defendant failed to contest liability by raising the two-year time limitation of N.C. Gen. Stat. § 97-47 until the filing with the Commission on February 12, 1998 of the Form 33R Response to Request for Hearing.
13. In October 1997 plaintiff began a job search assisted by Ms. Poplin. However, plaintiff's pain continued in her lower back, buttocks, and extremities. Nevertheless, plaintiff made a good faith but unsuccessful effort to find employment.
14. In January 1998, plaintiff's pain progressed and she returned to Dr. Moody, who noted that plaintiff was experiencing increasing spinal instability and that plaintiff was now indeed a surgical candidate. Dr. Moody requested that plaintiff be examined for a pre-surgery evaluation, but Claims Management denied the request and by April 1998 Claims Management still had not approved plaintiff's pre-surgery evaluation. Again, plaintiff was unable to get the appropriate and necessary medical care that would lessen her degree of disability.
15. In May 1998 Claims Management required plaintiff to return to Dr. DuPuy before seeking any other additional medical treatment. Dr. DuPuy received the results of Dr. Moody's tests performed on plaintiff and as a result of these test results also amended his original diagnosis of plaintiff to pars defect. However, Dr. DuPuy was of the opinion at this time that, even though he believed there was some association between plaintiff's March 24, 1995 compensable injury by accident and her pain and pars defect, surgery was not needed and he would still rate plaintiff with a 3% permanent partial disability to her back. After this visit with Dr. DuPuy, Claims Management again prohibited plaintiff from seeking additional medical treatment.
16. Plaintiff had been in pain since her admittedly compensable injury by accident of March 24, 1995 and was extremely frustrated. Consequently, plaintiff sought advice from her family physician who referred her to Dr. Charles Branch, a neurosurgeon at Wake Forest University Baptist Medical Center. On May 27, 1998 plaintiff saw Dr. Branch, who also diagnosed plaintiff with spondylolisthesis grade 1, L4-5. Dr. Branch agreed with Dr. Moody that plaintiff should have fusion surgery.
17. On August 20, 1998 Dr. Branch performed plaintiff's spinal fusion surgery. Plaintiff qualified for Medicaid, which paid for plaintiff's surgery and hardware. Plaintiff testified at the April 20, 1999 hearing before the Deputy Commissioner that the fusion surgery relieved her pain. In order to determine appropriate work restrictions, Dr. Branch recommended that plaintiff have a functional capacity evaluation and then, based upon the results, begin vocational rehabilitation. Neither the FCE nor the vocational rehabilitation have been authorized by defendant. Following the hearing before the Deputy Commissioner, on August 12, 1999 Dr. Branch released plaintiff at maximum medical improvement and assigned a permanent partial disability rating of 18% to her back.
18. Plaintiff's admittedly compensable injury by accident either caused or aggravated the condition for which Dr. Branch ultimately treated plaintiff. Drs. Moody and Branch both stated and the Commission finds that the spinal fusion was reasonably required in the further care and treatment of plaintiff in order to lessen her disability caused by the admittedly compensable injury by accident of March 24, 1995.
19. After reviewing all the evidence in the record, the Commission gives greater weight to the testimony and opinions of Drs. Moody and Branch than to the testimony of Dr. DuPuy. Dr. DuPuy's initial evaluation and diagnosis of plaintiff was not based on a complete and full battery of tests and imageries and was therefore not as complete as the diagnoses of Drs. Moody and Branch who ordered further testing and imageries which finally revealed the true etiology of plaintiff's pain.
20. As a direct result of the admittedly compensable injury, plaintiff was unable to earn wages in any employment and was temporarily totally disabled from July 29, 1997 until August 12, 1999, when she reached maximum medical improvement. The record contains no evidence as to the nature and extent of plaintiff's continuing disability and loss of wage earning capacity, if any, after August 12, 1999.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the course of her employment with defendant on March 24, 1995. N.C. Gen. Stat. § 97-2(6).
2. N.C. Gen. Stat. § 97-47 provides that a claim for a change of condition must be filed with the Commission within two years from the date of the last payment of compensation pursuant to an award. Although plaintiff did not file her claim for a change of condition within the statutory time period, defendant is estopped to assert the time bar of N.C. Gen. Stat. § 97-47 by its conduct in this case. Defendant admitted compensability and liability for plaintiff's claim by filing a Form 60. Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154,542 S.E.2d 277 (2001). However, defendant failed to execute a subsequent agreement or to pay compensation for the 3% permanent partial disability rating assigned to plaintiff as of September 24, 1996 by Dr. DuPuy, defendant's authorized treating physician. If defendant had acted in good faith and executed an agreement and paid the compensation due for the rating, plaintiff's Form 33 Request for Hearing would have been timely filed. Ammons v. Sneeden's Sons, Inc., 257 N.C. 785, 127 S.E.2d 575
(1962). Therefore, the Commission holds that defendant's conduct estops defendant from asserting the time limitation defense of N.C. Gen. Stat. § 97-47.
3. In addition, defendant also failed to execute any agreement when it resumed payment of compensation in October 1997. Defendant's voluntary resumption of payment of compensation to plaintiff on October 20, 1997, retroactive to July 29, 1997, constituted an admission of liability for an additional period of disability. Defendant failed to contest liability by raising the N.C. Gen. Stat. § 97-47 defense until it filed the Form 33R on February 12, 1998, four months after resumption of payment of compensation. Even assuming that the resumption of disability compensation was payment without prejudice (despite defendant's failure to file a Form 63), defendant did not admit or deny plaintiff's claim for additional compensation within ninety days. Therefore, defendant waived its right to contest the claim and plaintiff's entitlement to compensation becomes an award of the Commission. N.C. Gen. Stat. §97-18(d); see, Higgins v. Michael Powell Builders, 132 N.C. App. 720,515 S.E.2d 17 (1999).
4. As a result of plaintiff's admittedly compensable injury by accident, plaintiff was disabled and entitled to receive temporary total disability compensation at the rate of $164.77 per week beginning July 29, 1997 and continuing until August 12, 1999. N.C. Gen. Stat. § 97-29. Defendant is entitled to a credit for any temporary total disability compensation already paid plaintiff during this period. N.C. Gen. Stat. § 97-42.
5. The Commission is unable to determine from the record whether plaintiff is entitled to receive any continuing disability compensation for loss of wage earning capacity after August 12, 1999 or whether plaintiff would elect, after she reached maximum medical improvement, to receive compensation for the permanent functional impairment to her back.
6. Plaintiff is entitled to have defendant pay for her medical expenses incurred or to be incurred as a result of her admittedly compensable injury by accident, including all examinations, surgical procedures, and other treatments by Drs. Branch and Moody, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19), -25, -25.1.
7. Plaintiff is entitled to have defendant provide a functional capacity evaluation and vocational rehabilitation services for plaintiff as recommended by Dr. Branch. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a credit for compensation already paid and to a reasonable attorney's fee approved below, defendant shall pay to plaintiff temporary total disability compensation at the rate of $164.77 per week for her admittedly compensable injury by accident of March 24, 1995, beginning July 29, 1997 and continuing until August 12, 1999. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees provided below.
2. Defendant shall pay for all medical expenses incurred, or to be incurred, as a result of plaintiff's admittedly compensable injury by accident of March 24, 1995, including all examinations, evaluations, and treatments by Drs. Moody and Branch, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. Defendant shall provide a functional capacity evaluation and vocational rehabilitation services to plaintiff and plaintiff shall cooperate with the same.
4. A reasonable attorney's fee of 25% of the compensation benefits due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel.
5. The Commission RESERVES the issue of plaintiff's continuing disability, if any, after August 12, 1999 for subsequent determination to be made either by agreement between the parties or by the filing of a request for a new hearing in this matter.
6. Defendant shall pay the costs, including expert witness fees to Dr. DuPuy in the amount of $470.00, and $235.00 to Dr. Moody, if not already paid.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER